# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 12-CIV-80436-HURLEY

**GARRETT TELFAIR and TRAVIS TELFAIR,**

      **plaintiffs,**

**vs.**

**FEDERAL EXPRESS CORPORATION,**

      **defendant.**

_____/

## OPINION ORDER GRANTING DEFENDANT'S
## MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs Garrett and Travis Telfair sue their former employer, Federal Express Corporation ("FedEx"), alleging racial discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (Count 1) and the Florida Civil Rights Act of 1992 (FCRA), Fla. Stat. § 760.01 *et seq.* (Count 2), and religious discrimination and failure to accommodate in violation of the Florida Civil Rights Act of 1992 (FCRA), Fla. Stat., § 760.01 *et seq.* [1]

FedEx has moved for summary judgment on the following grounds: (1) failure to establish a prima facie claim of disparate treatment based on race for lack of evidence of adequate, similarly situated comparators who were treated more favorably; (2) failure to establish a prima facie claim for hostile racial environment for lack of evidence of racially charged commentary or harassment in

---

[1] Employment claims brought under sections 1981 and 1983 and the FCRA employ the same analysis as Title VII disparate treatment claims. *Nash v. Palm Beach County School District*, 469 Fed. Appx. 712, 713 n. 3 (11th Cir. 2012)(unpub), citing *Rice-Lamar v. City of Ft Lauderdale, Fla.*, 232 F. 3d 836, 843 n. 11 (11th Cir. 2000) and *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1985); *Jiles v. United Parcel Service, Inc.*, 360 Fed. Appx. 61 (11th Cir. 2010)(unpub). Because courts construe the FCRA and section 1981 in conformity with Title VII, the current analysis draws largely from case law interpreting Title VII.

the workplace; (3) failure to establish a prima facie claim of disparate treatment based on religion for lack of evidence of similarly situated comparators who were treated more favorably; and (4) failure to establish a prima facie case of religious discrimination/failure to accommodate for lack of evidence of a bona fide religious belief that conflicted with an employment requirement, or alternatively, for failure to raise genuine issue of material fact on the reasonableness of the employer's proffered accommodation to the plaintiffs' asserted religious beliefs.

## I. Summary Judgment Standard

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970). To prevail on a motion for summary judgment, the movant must show that the plaintiff has offered no evidence to support an essential element of his case, or present affirmative evidence that plaintiff will be unable to prove one or more essential elements of the case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). If the movant successfully negates an essential element of the plaintiff's case, the burden shifts to the plaintiff to come forward with evidence demonstrating a genuine issue of material fact for trial. *Id.*

Thus, summary judgment is appropriate when the moving party meets its burden of demonstrating that no genuine issue of any material facts exists, and the non-moving party fails to present evidence on an essential element of claim showing that a reasonable jury could find in its favor. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Unsupported speculation does not create a genuine issue of material fact, *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005), and "bare and self-serving" allegations made without personal knowledge are inadequate to survive summary judgment. *Stewart v. Booker T. Washington Insurance*, 232 F.3d 844, 851 (11th

2

Cir. 2000).

In ruling on a motion for summary judgment, the court is obligated to construe the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Owen v. I.C. System, Inc.*, 629 F.3d 1263 (11th Cir. 2011). If conflicts arise between the facts developed by the parties, the court must credit the non-moving party's version. *Davis v. Williams*, 451 F.3d 759 (11th Cir. 2006). For example, if the non-moving party presents an affidavit describing material, external facts based on first hand personal knowledge – and not subjective belief – the court is required to credit those statements and allow the jury to be the arbiter of any conflicts in the evidence. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)(quoting *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006)(even if district court "believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices"). On the other hand, the court is not required to credit an account which is "inherently incredible and could not support reasonable inferences sufficient to create an issue of fact," *Morton v. Kirkwood,* 707 F.3d 1276, 1285 (11th Cir. 2013) (quoting *Riley v. City of Montgomery, Ala.,* 104 F.3d 1247, 1251 (11th Cir. 1997), for example, where an accurate video recording completely and clearly contradicts a party's testimony. *Id.*

With these standards in mind, the court reviews the plaintiffs' evidence in this case in the light most favorable to their position.

## II. Facts[2]

1.   FedEx hired plaintiff Travis Telfair as a courier on November 28, 1991, and hired his brother, plaintiff Garrett Telfair, as a courier on November 22, 1995.  Both plaintiffs are African-American and both are Jehovah's Witnesses belonging to the Kingdom Hall of Jehovah's Witnesses, Lake Park Congregation.[3]

2.   At work, the plaintiffs reported to Matthew Lemke (operations manager), who in turn reported to Joe Mauceri (senior manager).  Both Lemke and Mauceri were aware of plaintiffs' religious beliefs as Jehovah's Witnesses at all material times during the course of their employment.

3.   Neither plaintiff was ever disciplined, suspended or terminated for performance or conduct-related infractions.

4.   No racially derogatory or questionable comments were ever made by supervisors or fellow employees at the FedEx workplace, and no questionable or disrespectful comments were ever made by supervisors or fellow employees about any employee's religious beliefs.

5.   When first hired, Garrett Telfair worked as a part-time courier on a Tuesday through Saturday shift, and continued on this schedule for about five years.  In 2001 or 2002, Garrett moved to a Monday through Friday schedule on which he remained up through the spring of 2009.  Travis Telfair similarly began working at FedEx as a part-time courier on a Tuesday through Saturday shift. After approximately five years, Travis moved to a full time position for about three years, and then back to a part-time morning position on a Monday through Friday shift up through the spring of

---

[2] The recited facts, drawn from the parties' Local Rule 56.1 Statements, evidentiary submissions, and  pleadings, are undisputed unless otherwise noted.

[3] Plaintiff Travis Telfair became a JW on June 30, 1984, and plaintiff Garrett Telfair became a JW on December 27, 1986.

2009.

6.  During the course of plaintiffs' employment at FedEx, management accommodated their request to take off one Friday each year to attend the annual Jehovah's Witnesses' district convention.  FedEx similarly accommodated the requests of Jewish employees for time off to observe recurring, specific religious holidays such as Rosh Hashanah and Yom Kippur.

7.  At time of initial hire, FedEx advised both plaintiffs that their work hours would be assigned on an as-needed basis depending on the company's business needs which fluctuated with customer demand.  FedEx also gave plaintiffs a copy of the FedEx Employee handbook, which recited, under "schedules," "Because of the nature of our business, the hours, shifts and days of your work week must remain flexible; work requirements and schedules may vary according to location and job duties."

8.  FedEx unilaterally promulgated a seniority system which controlled staffing assignments. Under this system, "redeployments," or shift changes, were always directed on the basis of seniority, with affected employees given the option of selecting from available positions within the reassigned pool, or taking a 90-day unpaid personal leave of absence in order to explore other employment opportunities within the FedEx organization.  Employees opting for the latter were treated as "voluntary resignations" by FedEx if they failed to secure alternative placement within the organization before expiration of the designated leave period.

9.  In late February, 2009, FedEx sent written official "Notification of Redeployment - Shift Change" to five part-time morning couriers -- Garrett Telfair, Travis Telfair, Darla Campbell, Holly Herman and James Kennedy – notifying them of removal from their Monday through Friday morning shift and reassignment to a Tuesday through Saturday morning shift.  The notification

contained advice of their option to take a 90-day unpaid personal leave of absence in lieu of redeployment in order to explore and secure other open positions for which they were qualified within the FedEx organization. Two other Caucasian part-time morning couriers working out of the same FedEx Palm Beach Airport location as the plaintiffs, Michelle Hodges and Gary Casper, were not selected for redeployment. Both had greater seniority than either plaintiff.

10. The plaintiffs' immediate supervisor, Matthew Lemke, spoke privately with both plaintiffs before FedEx issued official notification of the redeployment, and explained that the changes were prompted by a decrease in consumer delivery demand on Mondays. Both plaintiffs advised Lemke at that time that they were unable to work on Saturdays due to their religious obligations.

11. Lemke suggested that both plaintiffs submit a formal, written request for a "religious accommodation" pursuant to FedEx policy. Both submitted the request, asking for all fifty-two Saturdays of the year off as a religious accommodation.

12. On March 3, 2009, FedEx issued its response indicating it was unable to make the requested accommodation and directing both to report to their new assignments effective March 10, 2009.

13. In this same time frame, Senior Manager Mauceri offered both plaintiffs a "material handler" position at the same work location involving a Monday through Friday shift; both declined the offer, explaining in their affidavits submitted in opposition to summary judgment that the material handler spot was an entry level position which would have resulted in a $5 per hour reduction in their hourly wages.

6

14.   Plaintiffs did not accept the redeployment.  The other three redeployed couriers - Darla Campbell, James Kennedy and Holly Herman - did accept.  After doing so, Kennedy and Herman submitted job change applications and were successful in finding other positions (material handler and service agent respectively) with more desirable shift assignments at the FedEx Palm Beach location.

15.   After plaintiffs failed to report to their new shift assignment as scheduled, FedEx placed both on a unpaid 90-day personal leave of absence effective March 10, 2009, simultaneously reminding them of their right to submit an unlimited number of job bids on any other open positions for which they were qualified during the designated leave time.

16.   During this leave, neither plaintiff applied for or secured another open position within FedEx.  In their affidavits submitted in opposition to summary judgment, plaintiffs explain that they did not seek out alternative positions because they had no assurance they would be given a position excluding Saturday work hours, and transferred employees lost seniority for a period of six months.

17.   By inter-office memorandum dated August 3, 2009, captioned "End of Personal Leave of Absence/Acknowledgment of Voluntary Resignation," FedEx advised both plaintiffs that as a result of their failure to secure an alternative position with FedEx within the previously allotted 90-day personal leave of absence triggered as a result of their inability to accept redeployment, FedEx considered them both as "voluntarily resigned," effective immediately.

18.   In their affidavits submitted in opposition to summary judgment, both plaintiffs aver that they hold a sincere belief it is their religious obligation to conduct Bible study groups and engage in field ministry work on Saturdays as members and elders in their Jehovah's Witness congregation.  In deposition testimony, both further acknowledge that while it is customary for

Jehovah's Witnesses to engage in field ministry on Saturdays, Jehovah's Witnesses are encouraged and permitted to pursue field ministry on Monday through Friday as well.  Similarly, they both acknowledge that Bible study and faith sharing are permitted on days other than Saturday, and that there is nothing in Jehovah's Witness doctrine, scripture or tenets prohibiting its members from working on Saturdays, nor is there any sanction (excommunication, shunning, expulsion) imposed against Jehovah's Witnesses who work on Saturdays.

### III.  Discussion

In their first and second causes of action, plaintiffs allege disparate treatment discrimination, i.e. that FedEx intentionally discriminated against them by terminating their employment on account of their race or religion.[4]  In their third cause of action, plaintiffs allege that FedEx failed to accommodate their religious beliefs and then constructively terminated them because of their religion.  These claims are alternatively analyzed in the discussion which follows.

### A.  Racial and Religious Discrimination

Whether an employer intentionally discriminated against an employee is a question of fact, which may be proved either through direct or indirect evidence.  *Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012), citing *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1313 (11th Cir. 1994).  Direct evidence of discrimination is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of

---

[4]  The race discrimination counts also include generalized allegations of a racially-charged hostile work environment.  However, at oral argument on the summary judgment motions, counsel for plaintiff acknowledged the absence of evidence of any offensive racial commentary or behavior at the FedEx workplace and formally withdrew the hostile work environment claims.  Accordingly, this item is eliminated from the court's current analysis.

by the employee" and "that, if believed, proves the existence of a fact in issue without inference or presumption." *Id*. Therefore, "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor" constitute direct evidence of discrimination." *Akouri v. Florida Department of Transportation,* 408 F.3d 1338, 1347 (11th Cir. 2005)(quoting *Rojas v Florida,* 285 F.3d 1339, 1342 n. 2 (11th Cir. 2002). *See also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004); *E.E.O.C. v. Joe's Stone Crabs, Inc.,* 296 F.3d 1265 (11th Cir. 2002). Indirect evidence is circumstantial evidence. *Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012).

In this case, the plaintiffs do not offer direct evidence of discriminatory intent. Rather, plaintiffs proceed solely on the basis of comparator circumstantial evidence, relying on the familiar analytical framework set forth in *McDonnell Douglas v. Green,* 411 U.S. 792 (1973). To establish a prima facie case of discrimination under *McDonnell Douglas*, a plaintiff alleging discrimination must show: (1) he was a member of a protected class; (2) he was qualified for the position or otherwise met his employer's legitimate performance expectations; (3) he suffered an adverse employment action, and (4) he was treated less favorably than similarly situated employees outside of his protected class. *Maynard v. Board of Regents of Div. of Universities of the Florida Department of Education,* 342 F.3d 1281, 1289 (11th Cir.2003), citing *McDonnell Douglas*, 411 U.S. at 802.

If the plaintiff successfully establishes a prima facie case under this paradigm, a rebuttable inference of intentional discrimination arises, and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *E.E.O.C. v. Joe's Stone Crab, Inc.,* citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248 (1981); *Walker v. Mortham,* 158 F.3d 1177

(11th Cir. 1998). The employer's burden is one of production, not persuasion. If the employer meets this burden, the burden shifts back to the employee to show that the asserted explanations are inaccurate or otherwise unworthy of credence, with the ultimate burden of persuasion remaining at all times with the plaintiff. *Eastland v. Tennessee Valley Authority*, 704 F.2d 613 (11th Cir. 1983).

To raise a genuine issue of material fact precluding summary judgment on the issue of pretext, the plaintiff must show that a reasonable fact-finder could find the employer's reasons for its actions incredible because of inherent weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the proffered explanation. *See Putnam v. Secretary, Dept. of Veterans Affairs*, 2013 WL 656807 (11th Cir. Feb. 25, 2013), citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997). Ultimately, if "the proffered reason is one that might motivate a reasonable employer, an employee must meet the reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

In this case, FedEx does not contest the sufficiency of evidence on the first two elements of claim, and indeed the record evidence amply supports both elements. It does challenge the plaintiffs' ability to prove the third element of claim, i.e. the element of "adverse action," contending that the circumstances of plaintiffs' departure from FedEx amounted to a "voluntary resignation" of employment. Plaintiffs argue that their placement on involuntary unpaid leave of absence in March, 2009, culminating in their dismissal from employment in August, 2009, was essentially an involuntary termination under the intermediate "'take-it-ir-leave-it' ultimatum" delivered by FedEx when it placed them on involuntary leave.

10

While it could be argued that the mere fact of being transferred from a paid position to an extended unpaid leave of absence constitutes an adverse employment action, the facts of this case establish that FedEx's action was motivated by its desire to accommodate plaintiffs' religious beliefs.  The court need not resolve this question, however, because it is beyond dispute that plaintiffs were terminated at the end of the leave period and this most assuredly constitutes an adverse employment action.  The employer's use of the phrase "voluntary resignation" – done to benefit the employees should they seek reinstatement in the future – does not disguise FedEx's decision to terminate.

While the court is thus prepared to conclude,  as a matter of law,  that the circumstances of plaintiffs' departure from FedEx amount to an involuntary termination constituting an "adverse employment  action" within the meaning of the Title VII paradigm, plaintiffs still cannot establish a prima facie disparate treatment discrimination claim on the basis of either race or religion due to their inability to satisfy the fourth element of claim, i.e. for lack of evidence of sufficiently similar comparators outside their protected classifications who were treated more favorably.

On the race claim, plaintiffs do not identify any similarly situated Caucasian, part-time, morning couriers with equivalent or less seniority who (a) were not subjected to  redeployment or (b) refused to accept  redeployment, failed to explore or secure another open position at FedEx within the default personal leave of absence, and were  not discharged.  Similarly, plaintiffs do not identify any other non-Jehovah's Witness, part-time, morning couriers with equivalent or less seniority who were not redeployed to the Tuesday through Saturday shift, or who refused the redeployment, failed to secure another open FedEx position and were not terminated.

11

Although plaintiffs allege in their affidavits that there were other Caucasian, non-Jehovah's Witness part-time couriers with less seniority than plaintiffs who were not redeployed, this is a bare conclusion unsupported by any factual predicate for plaintiffs' personal knowledge of the circumstances of these individuals.  At the same time, FedEx has adduced evidence affirmatively demonstrating that the individuals in question were all afternoon couriers, a material distinction which eliminates the evidentiary utility of these persons as comparators.

In short, plaintiffs thus adduce no competent evidence of similarly situated persons outside their protected classifications who were either not redeployed, or who were permanently excused from Saturday work as a religious or personal accommodation.  Further, plaintiffs adduce no evidence that FedEx was willing to deviate from its policy of excusing employees who failed to pursue and secure alternative FedEx employment in lieu of redeployment in other cases. Accordingly, plaintiffs do not present sufficient comparator evidence to establish a prima facie case of racial or religious discrimination.  *See e.g. Burdette v. Federal Express Corporation,* 367 Fed. Appx. 628 (6th Cir. 2010)(unpub)(discharged employee of delivery service company, who was Seventh Day Adventist, failed to establish that she was treated differently than similarly situated employees based on religion, where no other employee holding same position and seniority as plaintiff was permitted to have all Saturdays off, and plaintiff adduced no evidence that employer was willing to deviate from its "three strikes" policy against employees committing similar attendance infractions).

Finally,  even if the plaintiffs were able to adduce sufficient evidence to establish a prima facie case of disparate treatment under *McDonnell Douglas*, this would simply result in shifting the burden to FedEx to articulate a non-discriminatory reason for its actions.  FedEx accomplishes this

by showing the March 2009 redeployment was prompted by shifts in consumer delivery demands; that redeployment was implemented on the basis of seniority in accordance with standard FedEx policy; and that the plaintiffs' failure to secure alternative posts within FedEx in lieu of redeployment was deemed to operate as a voluntary resignation of their employment consistently with FedEx's earlier advice to plaintiffs.

In turn, this would shift the burden back to plaintiffs to show that the proffered explanation for the defendant's action is pretextual, requiring the production of some evidence, direct or circumstantial, from which a fact finder could reasonably either disbelieve FedEx's articulated legitimate reason, or to believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause behind FedEx's action. *Simpson v. Kay Jewelers, Div. of Sterling, Inc*., 142 F.3d 639 (3d Cir. 1998).

Here, plaintiffs argue simply that FedEx's proffered explanation does not deserve credence because it is inconsistent with other FedEx management decisions pertaining to Saturday work shifts. For example, plaintiffs aver that FedEx "was sending employees home on Saturdays due to lack of work," referencing oral statements attributed to Kenneth McKelton, the Saturday supervisor at the FedEx Palm Beach airport location.  Even assuming the statements of McKelton might be considered as substantive evidence of a FedEx courier staffing surplus on Saturdays, this evidence is in no way inconsistent with the notion that the March 2009 redeployment was undertaken by FedEx in effort to adjust its courier work schedules to meet peak consumer demands and fluctuations in volume. At best it is a suggestion that FedEx might have simultaneously labored under an occasional Saturday staffing surplus as well, but it does not detract from the plausibility of the  Monday staffing surplus that allegedly prompted the redeployment.

13

Plaintiffs also point to shift assignment concessions made to part-time employee, Miriam Rivera, as evidence of an inconsistency in FedEx's treatment of Saturday work accommodations bearing on the issue of pretext. However, the affidavit of Rivera clearly demonstrates that she was *not* relieved of Saturday work during the time she labored as a part-time courier at the plaintiffs' home base, the FedEx Palm Beach airport location (PBI/A); rather, from October 2004 through October 2009, she worked a Tuesday through Saturday schedule out of that location. In October, 2009, she accepted a position as a permanent, part-time "ramp agent" at a the Palm Beach airport ramp location (PBI/R), allowing a switch to a Monday through Friday shift, and then later a Tuesday through Friday shift. In January 2012, she accepted a position as a part- time "material handler" at the ramp location and retained this same four-day work week. Thus, Rivera is clearly not "similarly situated" to plaintiffs in all material respects, and any Saturday work relief accommodations made to Rivera do not inject any inconsistency or implausibility into the proffered reason for the FedEx redeployment directive governing the part-time, morning courier staff operating out of the FedEx airport location.

Because plaintiffs do not show that the proffered reason for their redeployment contained any inherent "weakness, implausibilities, inconsistencies, incoherencies or contradictions," they fail to raise a genuine issue of fact on the existence of "pretext," and necessarily suffer summary judgment on both disparate treatment claims for this further and alternative reason as well. *See e.g. Barnette v. Federal Express Corporation,* 491 Fed. Appx. 176 (11th Cir. 2012)(unpub).

## B.  Religious Discrimination: Failure to Accommodate

Title VII declares that it is an unlawful employment practice for an employer "to discharge any individual ... because of such individual's ... religion."  42 U.S.C. § 2000e-2(a).  The statute defines "religion" as including -

> all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. §2000e(j).[5]  Plaintiffs allege that FedEx violated its duty to reasonably accommodate their religious belief that they must participate in Jehovah's Witness field ministry and Bible study activities on Saturdays.

To establish a prima facie Title VII claim of failure to accommodate religious beliefs, plaintiffs must show:  (1) they held a sincere, bona fide religious belief that conflicted with an employment requirement; (2) they informed FedEx of the belief and conflict; and (3) they were discharged for failing to comply with the conflicting employment requirement.  *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849 (11th Cir. 2010); *Tepper v. Potter,* 505 F.3d 508, 514 (6th Cir. 2007);  *Wright v. Runyon*, 2 F.3d 214, 216 n. 4 (7th Cir. 1993), *cert. den.*, 510 U.S. 1121 (1994).

As to the first element, although FedEx does not dispute the subjective sincerity of plaintiff's asserted religious beliefs, it does question whether those beliefs qualify as "bona fide" Jehovah's Witness religious beliefs adequate to sustain a failure to accommodate claim where plaintiffs do not identify any formal doctrine or tenet of their faith prohibiting members, including elders, from

---

[5]  The EEOC regulations implementing Title VII with respect to religious accommodation track the language of the accommodation  provision in the statutory definition of religion,  see 29 C. F. R. §1605.2.  *Ali v. Alamo Rent-A-Car, Inc.*, 8 Fed. Appx. 156 (4th Cir. 2001).

working on Saturdays.  With this evidentiary lapse, FedEx contends that the plaintiffs' desire to exclude Saturday work is simply a personal preference, and not a "bona fide" religious belief entitled to protection under Title VII.

Title VII is a neutral provision which entitles every employee to a reasonable accommodation of his or her religious beliefs and practices.  *See e.g. Young v. Southwestern Savings and Loan Association,* 509 F.2d 140 (5th Cir.1975)(atheist employee constructively discharged in circumstances constituting religious discrimination when forced as a condition of employment to attend monthly staff meetings including religious exercises with which she did not agree).  An employer is not obligated to accommodate what amounts to a "purely personal preference," *Vetter v. Farmland Industries, Inc.*, 120 F.3d 749 (8th Cir. 1997), but, at the same time, "[t]he statute...leaves little room for a party to challenge the religious nature of an employee's professed beliefs." *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarrillados de Puerto Rico,* 279 F.3d 49, 56 (1st Cir. 2002), as religious beliefs protected by Title VII need not be "acceptable, logical, consistent or comprehensible to others..." *Id.,* citing *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 714 (1981).

To qualify as a "bona fide" religious belief, the belief must be "sincerely held" and, "in the [believer's] own scheme of things, religious." *United States v. Seeger*, 380 U.S. 163 (1965).  *Cf. also Hager v. Sec. of Air Force,* 938 F.2d 1449, 1454 (1st Cir. 1991)(noting similar test for determining whether applicant is entitled to exemption from military service as a conscientious objector).  Ordinarily, the sincerity of an employee's religious belief is a "quintessential fact question[]" appropriately reserved "for the fact finder at trial, not for the court at summary judgment. *E.E.O.C. v Union Independiente*, *supra* at 56, citing *Simas v. First Citizens ' Federal Credit Union*,

16

170 F.3d 37, 49 (1ˢᵗ Cir. 1999).  As expressed by the First Circuit in *Union Independiente*:

> On the one hand, the defendant is entitled to hold the plaintiff to his burden, making it "entirely appropriate, indeed necessary, for a court to engage in analysis of the sincerity of someone's religious beliefs... [citations omitted].  On the other hand, "[s]incerity analysis is exceedingly amorphous, requiring the fact finder to delve into the [employee's] most veiled motivations and vigilantly separate the issue of sincerity from the fact finder's perception of the religious nature of the [employee's] beliefs. "  *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984).  Thus, at trial the court must be carful in separating the verity and sincerity of an employee's belief in order to prevent the verdict from turning on "the fact finder's own idea of what a religion should resemble."  [citations omitted]

*Id.* at 57.  In this case, there is abundant evidence in the record to support the conclusion that both plaintiffs subjectively believed that the practice of field ministry and engagement in Bible study on Saturdays was a necessary expression of their religion.  Indeed, FedEx does not quarrel with the subjective sincerity of these asserted beliefs.  While FedEx does question whether the plaintiffs' perception of their religious obligations is actually grounded in formal Jehovah's Witness doctrine – i.e. whether formal Jehovah's Witness doctrine actually requires that members or elders participate in Saturday field ministry or Bible study as opposed to simply encouraging these practices – this debate is beyond the proper scope of this court's inquiry into the sincerity of the plaintiffs' religious beliefs.  *See Reyes v.  New York State Office of Children and Family Services*, 2003 WL 21709407 *6 (S. D. N. Y. 2003)("In Title VII cases concerning religious discrimination, as in questions regarding the free exercise of religion, it is only appropriate for a court to engage in an analysis of the sincerity of a plaintiff's religious beliefs, and not the verity of those beliefs"), *aff'd* 109 Fed. Appx. 466 (2d Cir. 2004)(unpub); *Redmond v. GAF Corp*, 574 F.2d 897, 900 (7ᵗʰ Cir. 1978)(quoting *Fowler v. Rhode Island*, 345 U.S. 67, 70 (1953)("[I]t is no business of courts to say ... what is a religious practice or activity...");  *Patrick v. LeFevre*, 745 F.2d 153, 157  (2d Cir. 1984).  ("It cannot

be gainsaid that the judiciary is singularly ill-equipped to sit in judgment on the verity of an adherent's religious beliefs.  Mindful of this profound limitation, our competence properly extends to determining 'whether the beliefs professed by a [claimant] are sincerely held and whether they are, in his own scheme of things, religious.'").

FedEx does adduce some evidence that the plaintiffs' professed religious belief in the necessity of Saturday religious obligations is not rooted in formal Jehovah's Witness doctrine. While such evidence might have tangential relevance to the question of the sincerity of the plaintiffs' religious beliefs, it does not convert the plaintiffs' asserted belief system into a "personal preference" as a matter of law, as urged by FedEx.  While it is true that beliefs and practices grounded in tenets or precepts of groups or entities that are more social and political than religious do not qualify as religious within Title VII, *Andrews v. Virginia Union University,* 2008 WL 2096964 (E.D. Va. 2008), citing *Bellamy v. Mason's Stores, Inc.(Richmond)*, 508 F.2d 505 (4th Cir. 1974), it is also clear that "Title VII's protections are not limited to beliefs and practices that courts perceive as "acceptable, logical, consistent or comprehensive to others," and that an employee's religious beliefs need not be espoused by a formal religion or conventionally organized church in order to qualify for statutory protection.  *Cloutier v. Costco Wholesale*, 311 F. Supp. 2d 190 (D. Mass. 2004) (quoting *Thomas v. Review Bd of Ind. Employment Sec. Div*, 450 U.S. 707 (1981) and 29 C. F. R.§ 1605.1), *aff'd*, 390 F.3d 126 (1st Cir. 2004), *cert. den*., 545 U.S. 1131 (2005).

In this case, there is abundant evidence that the plaintiffs' beliefs and practices relate to their own interpretation of their religious obligations as Jehovah's Witness elders, and no evidence from which a finder of fact might reasonably infer that either plaintiff was insincere in his asserted beliefs. FedEx does not attempt to argue otherwise.  As it appears that plaintiffs have raised sufficient

evidence to present triable issues on whether their beliefs and practices are of a religious nature, they adduce sufficient evidence to satisfy the first element of their prima facie failure to accommodate claim.  *See e.g. Bowles v. New York City Transit Authority*, 2006 WL 1418602 *9 n.18 (S. D. N. Y. 2006);  *Jiglov v. Hotel Peabody, G.P.*, 719 F. Supp. 2d 918 (W.D. Tenn. 2010); *Weathers v. FedEx Corporate Services, Inc.*, 2011 WL 5184406 (N.D. Ill. 2011).[6]

It is also undisputed that plaintiffs informed FedEx of the existence of this belief and its conflict with the requirement for Saturday work under FedEx's March 2009 redeployment directive. Thus, plaintiffs adduce sufficient evidence to create a triable issue on the second element of their prima facie failure to accommodate claim.

The third, "adverse action" element of claim raises the same mixed question of fact and law identified above in the court's discussion of the disparate treatment claims, and merits the same resolution.  The court finds sufficient evidence in the record to conclude, as a matter of law, that the circumstances of plaintiffs' departure from FedEx constituted an involuntary termination rising to the level of actionable "adverse employment action" within the meaning of Title VII.

This, however, simply completes the elements of plaintiffs' prima facie failure to accommodate case, thus shifting the burden to FedEx to present evidence showing *either* (1) that it provided plaintiffs with a reasonable accommodation for their religious observances, or (2) that such an accommodation was not provided because it would have caused an undue hardship, i.e. it would have imposed more than a minimal hardship on the employer or other employees.  *See Beadle v.*

---

[6]  *Cf.  Tiano v. Dillard Department Stores, Inc.,* 139 F.3d 679 (9th Cir. 1998)(rejecting asserted religious belief in necessity of attending religious pilgrimage during middle of retail employer's busy holiday season where no doctrinal basis for asserted obligation shown and pilgrimage could have been conducted any time).

*Hillsborough County Sheriff's Dept.,* 29 F.3d 589 (11th Cir. 1994), citing *Ansonia Bd. Of Educ. v. Phillbrook,* 479 U.S. 60, 68 (1986), *cert. den.*, 514 U.S. 1128 (1995); *E.E.O.C. v Firestone Fibers & Textiles Co.*, 515 F.3d 307 (4th Cir. 2008); 42 U.S.C. 2000e(j)). [7]

The definition of a "reasonable accommodation" in the context of a Title VII religious failure to accommodate claim depends on the totality of the circumstances and might, or might not, require elimination of a particular, fact specific conflict. *Sturgill v. United Parcel Service, Inc.*, 512 F.3d 1024, 1031-1032 (8th Cir. 2008), citing *Ansonia Bd. of Education v. Philbrook* 479 U.S. 60, 70 (1986). An accommodation is reasonable as a matter of law, if it in fact eliminates a religious conflict in the workplace; accordingly, if the conflict is eliminated the employee has no right to insist upon a different accommodation that he prefers. *Id.* On the other hand, an accommodation is not

---

[7] Because in this case the conflict was created by the implementation of a neutral seniority system, the court notes, as a threshold issue, a question as to whether *any* duty to accommodate was triggered. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 563 (1977). In *Hardison*, the Supreme Court established that the Title VII duty to reasonably accommodate religious beliefs does not require an employer "to take steps inconsistent with an otherwise valid [collective bargaining] agreement," nor does it require an employer to discriminate against other employees by depriving them of collectively bargained seniority rights in order to accommodate an employee's observance of the Saturday Sabbath. *Id* at 79, 81.

In *U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 122 S. Ct. 1516 (2002), interpreting analogous accommodation language in the ADA, the Supreme Court further held that unilaterally imposed seniority systems (like the FedEx system) are entitled to the same deference on theory "the relevant seniority system advantages, and related difficulties that result from violations of seniority rules, are not limited to collectively bargained systems, " identifying these advantages to include creation and fulfillment of "employee expectations of fair, uniform treatment." *Id.* at 405. In *Barnett,* it concluded in the ADA context that a showing of conflict between a requested accommodation and rules of a seniority system will *ordinarily* be sufficient, by itself, to demonstrate that a requested accommodation is unreasonable as a matter of law.

Because FedEx does not disclaim a duty to accommodate in the present case, but rather, defends the reasonableness of the accommodations which it in fact offered to plaintiffs at time of redeployment, the court will not address this larger issue of whether any duty to accommodate is triggered in the first instance by a work conflict which is the product of a neutrally applied seniority system.

unreasonable as a matter of law simply because it fails to eliminate all possible conflicts between employment requirement and the employee's religion. *Id.* "Title VII does not require an employer to give an employee a choice among several accommodations... [r]ather, the inquiry ends when an employer shows that a reasonable accommodation was afforded the employee, regardless of whether that accommodation is one which the employee suggested. *Beadle,* 29 F.3d at 592, citing *Ansonia Bd. of Education v. Phillbrook*, 479 U.S. 60, 68 (1986).

It is sufficient, for example, that the employer offer to help the employee apply for other positions where the likelihood of encountering further conflicts with his or her religious beliefs would be reduced. *See e.g. Walden v. Centers for Disease Control and Prevention*, 669 F.3d 1277 (11th Cir. 2012); *Bruff v. North Mississippi Health Services, Inc*., 244 F.3d 495 (5th Cir. ), *cert. den*., 534 U.S. 952 (2001). Similarly, allowing an employee to avail himself of a company seniority system for bidding on more favorable shifts, combined with a "first come first serve" procedure for requesting Fridays off in advance, has been held to be a significant and sufficiently adequate accommodation. *Cook v. Chrysler Corp*., 981 F.2d 336 (8th Cir. 1992)(employer who terminated Seventh Day Adventist for absences caused by religiously motivated refusal to work from sundown Friday to sundown Saturday did not violate statute requiring "reasonable accommodation," where accommodation requested would have compromised other employees' contractual seniority rights), citing *Trans World Airlines Inc. v. Hardison*, 432 U.S. at 78, 97 S. Ct. at 2273 (seniority system, establishing a neutral way to minimize occasions when employee would have to work on day he would prefer to have off, was in itself a significant accommodation to the religious and secular needs of employees); *Mann v Frank*, 7 F.3d 1365, 1367-69 (8th Cir. 1993)(same).

In this case, FedEx correctly asserts that it is only required to show that it offered "a"

reasonable accommodation to plaintiffs, and not necessarily one that eliminates the conflict. It claims that it satisfied this obligation, first by offering plaintiffs alternative posts as material handlers, involving a Monday through Friday shift, and second by giving both the opportunity to submit an unlimited number of bids on other open positions within the FedEx organization before the expiration of the designated leave of absence which FedEx voluntarily extended up through August 2009 - a five month period of time.

The court holds that both of these proffered accommodations are reasonable under the circumstances, which include FedEx's adherence to and consistent application of a neutral seniority system. There is no evidence that FedEx randomly or routinely departed from the prescriptions of that system in directing shift changes, nor is there any evidence that the system was burdened with so many exceptions as to raise a question on the reasonableness of FedEx's failure to deviate from that policy in responding to the plaintiffs' request for accommodation. Further, the evidence shows that any further efforts to reasonably accommodate the plaintiffs would have compromised the rights of other workers under the FedEx seniority system and contravened established FedEx policy and procedures for creating shift reassignments in a redeployment. FedEx supervisors personally approached both plaintiffs in an effort to reasonably accommodate their desire to keep Saturdays free for religious activities with an option to assume a material handler positions, but neither was willing to accept that slightly lower paying position to gain a Monday through Friday shift, and neither was willing to avail himself of the opportunity to search within the FedEx organization for a position less likely to generate a religious conflict.

Any further accommodation on the part of FedEx would have been too costly, impractical or contrary to the FedEx seniority system by either forcing FedEx to hire replacement staff for

Saturdays; forcing plaintiffs' co-workers to forfeit their seniority rights and bear the brunt of working the less attractive weekend shift assignments, or simply forcing FedEx to "do without" on Saturdays, causing it to suffer a significant loss in efficiency. *See Trans World Airlines v. Hardison,* 432 U.S. at 80-81, 97 S. Ct. at 2275 ("It would be anomalous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preference of some employees ... in order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far").

On this predicate, the court holds that FedEx's proffered accommodations were reasonable as a matter of law, thus satisfying Title VII's reasonable accommodation provision, *Hardison,* 432 U.S. at 83 n. 14, 97 S. Ct. at 2276 n. 14, *see e.g. Mann v. Frank,* 7 F.3d 1365, 1369 (8th Cir. 1993); *Rose v. Potter*, 90 Fed. Appx. 951 (7th Cir. )(unpub), *cert. den*., 543 U.S. (2004); *Prach v. Hollywood Supermarket, Inc.*, 2010 WL 3419461 (E.D. Mich. 2010), as well as the FCRA's analogous requirements. FedEx is accordingly entitled to summary judgment on the plaintiffs' religious accommodation claims. *See e.g. Walden v. Centers for Disease Control and Prevention*, 669 F.3d 1277 (11th Cir. 2012) (employer reasonably accommodated employee asserting bona fide religious belief that she could not provide relationship counseling to individuals in same sex relationships when it encouraged her to obtain new employment with the company and offered her assistance in doing so); *Bruff v. North Mississippi Health Services, Inc.,* 244 F.3d 495 (5th Cir. 2001)(hospital offered reasonable accommodation as a matter of law to counselor in employee assistance program who refused to counsel clients on subjects conflicting with her religious beliefs, where hospital offered to give her an employment counselor and provided thirty days to find another position at hospital where likelihood of encountering further conflicts with her religious beliefs would be reduced).

## IV. Conclusion

Based on the foregoing, it is  **ORDERED AND ADJUDGED:**

1.  The defendant's motions for summary judgment [ECF Nos. 35, 36] are **GRANTED**.

2.  Final summary judgment shall enter in favor of the defendant and against the plaintiffs by separate order of the court pursuant to Rule 58.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 28th day of March, 2013.

Daniel T. K. Hurley
United States District Judge

cc. All counsel